IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
WICHITA FALLS DIVISION

| | | |
|---|---|---|
| MW BUILDERS OF TEXAS, INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | CIVIL ACTION NO. 7:08-CV-00192-O |
| v. | § | |
| | § | |
| THE CITY OF WICHITA FALLS, and | § | |
| BIGGS & MATTHEWS, INC. | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM OPINION AND ORDER**

Before the Court are the Motions to Dismiss under Federal Rule of Civil Procedure 12(b)(1), filed by Defendants City of Wichita Falls (Doc. #8) and Biggs & Matthews, Inc. (Doc. #9) on December 3, 2008. Also before the Court are Plaintiff MW Builders of Texas Inc.'s Response (Doc. #11), Defendant City of Wichita Falls' Reply (Doc. #14) and Defendant Biggs & Matthews' Reply (Doc. #13). Having reviewed Defendants' motions and the applicable law, the Court finds as follows:

I.   Background

Plaintiff, a commercial contractor based in Temple, Texas, was awarded five contracts by the City of Wichita Falls ("City") to work on the construction of a water treatment plant. *See* Amend. Compl. at 6. Each contract contained its own price, project specifications, time-line, and liquidated damages clause. *Id*. Of the five contracts awarded, only one was completed in a timely manner, leading the City to withhold liquidated damages from Plaintiff on the other four contracts. *See* Amend. Compl. at 9, 11. Plaintiff's civil rights action is based on the City's

1

assessment of the liquidated damages clauses contained in the four outstanding contracts. *See* Amend. Compl. at 13.

Plaintiff [1] filed its First Amended Complaint ("Amend. Compl.") (Doc. # 7) on November 12, 2008, bringing several claims against Defendants. Only one of the enumerated counts in the complaint, however, invokes original federal jurisdiction under 42 U.S.C. § 1983. Plaintiff argues that the claims arising pursuant to Section 1983 do so under three theories:

(1) In its amended complaint, Plaintiff alleges its rights were violated under the Fifth[2] and Fourteenth Amendments by (a) Defendant City's reliance on liquidated damages provisions that are unenforceable as written[3], (b) Defendant City's arbitrary and capricious conduct in enforcing those provisions, and (c) Defendant Biggs & Matthew's ("B&M") active participation in the City's decisions to withhold full payment. *See* Amend. Compl. at 12-14.

(2) Plaintiff claims the City impaired the contracts at issue in violation of the Contracts Clause of the United States Constitution. *Id*. at 13.

(3) Plaintiff alleges that the City violated its rights under the Equal Protection Clause of the Constitution because it was subjected to liquidated damages up to five times larger than those of other contractors awarded contracts to work on the treatment plant. *Id.*

In essence, Plaintiff asserts three claims – the fulcrum of which appears to be nothing more than a cause of action for monetary damages under the commercial contract[4] – arising under Section

---

[1] Plaintiff filed its first suit on October 11, 2006, in the 78th District Court of Wichita County against the City and one of the plaintiff's subcontractors. *See* City's Mtn. at 3. The State District Court ultimately granted the City's Amended Plea to the Jurisdiction and dismissed all claims against the City without prejudice. *Id.*

[2] Plaintiff clarifies in its Response to Defendants' Motions to Dismiss that it is referring to the Takings Clause. *See* Pl's Resp. at 2.

[3] Plaintiff contends that the contracts are arbitrary and capricious because the liquidated damages provisions in the contracts utilized a sliding scale for calculating damages. *See* Amend. Compl. at 13.

[4] Plaintiff's Amended Complaint repeatedly directs the Court to allegations for claims of monetary damages under the contract. See, for example, ¶ 32-35, 42, 45, 49, 54, 56, 59, 61, and 63.

1983, which it contends give rise to federal question jurisdiction. *See* Pl. Resp. at 2-3. The Court will take up each of these claims in turn.

Defendants, on the other hand, argue that Plaintiff's claims alleging the City breached its contracts do not constitute due process violations cognizable by a Section 1983 action in federal court. *See* City's Reply at 8. Defendants also highlight the fact that Plaintiff does not suggest or argue that the terms of the contract were not freely negotiated or agreed upon. *See* City's Mtn. at 2,6; B&M's Mtn. at 3; City's Reply at 3; B&M's Reply at 4-5.

II.     Legal Standard

Federal courts are courts of limited jurisdiction; without jurisdiction conferred by the Constitution or federal statute, they lack the power to adjudicate claims. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). They "must presume that a suit lies outside this limited jurisdiction, and the burden of establishing federal jurisdiction rests on the party seeking the federal forum." *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001). A motion to dismiss for lack of subject-matter jurisdiction allows for dismissal of a lawsuit where a federal court lacks the authority to hear the dispute. *See generally, U.S. v. Morton*, 467 U.S. 822, 828 (1984) (subject-matter jurisdiction defines court's authority to hear given type of case). A claim is properly dismissed under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction when the court does not have statutory or constitutional power to adjudicate the claim. *See* FED R. CIV. P. 12(b)(1); *Home Builders Ass'n, Inc. v. City of Madison,* 143 F.3d 1006, 1010 (5th Cir. 1998). Every federal court has an independent duty to determine whether it has federal subject-matter jurisdiction over a case. *See Ruhgras AG v. Marathon Oil Co.,* 526 U.S. 574, 583 (1999) ("[S]ubject-matter delineations must be policed by the courts on their own

initiative even at the highest level."); *McDonal v. Abbott Labs.,* 408 F.3d 177, 182 n. 5 (5th Cir. 2005) ("federal court may raise subject matter jurisdiction *sua sponte*").

"When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (per curiam). A court must initially resolve a 12(b)(1) motion to dismiss for lack of subject-matter jurisdiction before most of the defendant's other challenges. *Moran v. Kingdom of Saudi Arabia*, 27 F.3d 169, 172 (5th Cir. 1994). If subject-matter jurisdiction is lacking, the federal court lacks the ability to adjudicate the claim before it, and must dismiss it. *Id.; Stockman v. Federal Election Comm'n,* 138 F.3d 144, 151 (5th Cir. 1998) (citing *Veldhoen v. United States Coast Guard,* 35 F.3d 222, 225 (5th Cir. 1994)).

"[A] complaint should not be dismissed for lack of subject matter jurisdiction unless the federal claim is 'immaterial and made solely for the purpose of obtaining jurisdiction or … is wholly insubstantial and frivolous.'" *Meason v. Bank of Miami*, 652 F.2d 542, 546 (5th Cir. 1981) (quoting *Bell v. Hood*, 327 U.S. 678, 682-683 (1946)); *see also*, *John Corp. v. City of Houston*, 214 F.3d 573 (5th Cir. 2000) (citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89 (1998) (quoting *Bell*, 327 U.S. at 682-83). "The question may be plainly unsubstantial, either because it is 'obviously without merit' or because 'its unsoundness so clearly results from the previous decisions of this court as to foreclose the subject and leave no room for the inference that the question sought to be raised can be the subject of controversy.'" *John Corp.*, 214 F. at 579, (citing *Ex Parte Poresky*, 290 U.S. 30, 32 (1933) (per curiam) (quoting *Levering & Garrigues Co. v. Morrin,* 289 U.S. 103, 105 (1933)). "Enough should be alleged in the

4

statement" of a claim "to show that the action does arise under the statute on which it purports to be based . . . the mere conclusory reference to or recitation of a federal statute in the jurisdictional allegations" will not suffice. *Abel v. Broussard*, No. 06-1640, 2006 U.S. Dist. LEXIS 64636 at * 14-15 (E.D. La. Jun.1, 2006) (quoting Wright & Miller, *Federal Practice and Procedure*, § 1210 at 146).

A district court may dismiss for lack of subject matter jurisdiction based on (1) the complaint alone; (2) the complaint supplemented by undisputed facts in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts. *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981). A motion to dismiss based on the complaint alone presents a "facial attack" that requires the court to merely decide whether the allegations in the complaint, which are presumed to be true, sufficiently state a basis for subject-matter jurisdiction. *See Paterson v. Weinberger*, 644 F. 2d 521, 523 (5th Cir. 1998). "If sufficient, those allegations alone provide jurisdiction." *Id.* When the defendant supports the motion with evidence, then the attack is "factual" and "no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Williamson*, 645 F.2d at 413. Regardless of the nature of attack, the party asserting jurisdiction constantly carries the burden of proof to establish that jurisdiction does exist. *Ramming*, 281 F.3d at 161. In the present matter before the Court, Defendants' motions challenge the Court's subject-matter jurisdiction based on the sufficiency of the pleading's allegations, and is therefore a facial attack. *U.S. v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994). The Court has not been presented with, and thus need not

consider, evidence submitted outside the pleadings. *See Ramming*, 281 F.3d at 161; *Williamson*, 645 F.2d at 412-13.

### III.   Analysis

Section 1983 is a vehicle that creates a cause of action for a plaintiff to establish and enforce federal rights created by the United States Constitution or by other federal statutes. *Albright v. Oliver*, 510 U.S. 266, 271 (1994). However, Section 1983 does not create or establish a right in and of itself. Section 1983 provides a private right of action against parties acting "under color of any statute, ordinance, regulation, custom, or usage, of any State" to redress the deprivation of rights secured by the United States Constitution or federal law. *City of St. Louis v. Praprotnik*, 485 U.S. 112, 117 (1988).

To state a claim under 42 U.S.C. § 1983, a plaintiff must demonstrate: (1) a violation of the United States Constitution or of federal law; and (2) that the violation was committed by someone acting under color of state law. *See Gomez v. Toledo*, 446 U.S. 635, 640 (1980) (citing *Monroe v. Pape*, 365 U.S. 167, 171 (1961)).

### A.   Due Process

First, Plaintiff alleges it was deprived its due process rights under the Fifth and Fourteenth Amendments. The Due Process Clause protects against deprivations of life, liberty, or property without due process of law. *See Zinermon v. Burch*, 494 U.S. 113, 125 (1990). The Fourteenth Amendment's procedural protection of property is a safeguard of the security of interests that a person has already required in specific benefits. *Bd. of Regents v. Roth*, 408 U.S. 564, 576 (1972). When asserting a due process claim, plaintiffs must show a specific property interest for a substantive due process claim as well. *See Neuwirth v. Louisiana State Bd. of*

*Dentistry*, 845 F.2d 553, 558 (5th Cir. 1988). "Whether 'due process' has been accorded a plaintiff is not material unless he demonstrates that state action deprived him of a constitutionally protected interest." *Id.* at 557. Thus, the current dispute before the Court rests on whether Plaintiff has a constitutionally protected interest in "full and fair" payment pursuant to its contracts with Defendants. *See* Amend. Compl. at 3.

In order to establish a constitutionally protected property interest, Plaintiff "must have more than an abstract need or desire for [a thing] . . . [and] more than a unilateral expectation of it." *Roth*, 408 U.S. at 577. Plaintiff brings Section 1983 claims against the City of Wichita Falls, a home rule city[5], for violation of its federally protected property rights under the Fifth and Fourteenth Amendments. *See* Amend. Compl. at 4-5. It does so under two theories: (1) that an assessment of arbitrary and capricious liquidated damages provisions violates the Takings Clause and (2) that the Defendants' arbitrary and capricious conduct constitutes a substantive due process violation. *See* Pl. Resp. at 5, 10. Whether Plaintiff has a protected property interest for purposes of the Due Process Clause of the Fourteenth Amendment, an essential element of its claim, depends on whether an independent source of "existing rules or understandings," such as state law, creates a reasonable expectation in the particular interest. *Roth*, 408 U.S. at 577.

    **1.**    **Constitutionally Protected Property Interest**

        **a.**    **Substantive Due Process**

---

[5] A municipality is a home-rule municipality if it operates under a municipal charter that has been adopted or amended as authorized by Article XI, Section 5, of the Texas Constitution.

Plaintiff argues that it has a property interest in the contract because Defendant violated its substantive due process rights. Plaintiff asserts that the City deprived it of its rights by the "assessment of liquidated damages, which are arbitrary, capricious, and grossly disproportionate to any actual damages incurred, constitutes a per se substantive violation of the Takings Clause." *See* Pl's Resp. at 4-5 (citing *Missouri Pac. R. Co. v. Tucker*, 230 U.S. 340, 350-51 (1913)).

Plaintiff relies on *Tucker*, where the Supreme Court recognized that as a common carrier, a railroad company was not "at liberty to accept or decline shipments of oil." *Id.* at 347. *Tucker* specifically dealt with the Kansas legislature setting invalid rates that prevented the railroad company from collecting a reasonable return on the service it provided to the public or from instituting a judicial proceeding to challenge the validity of legislative rates. *Id.* at 347-48. The present case and *Tucker*, however are distinguishable. The parties before the Court were at liberty to negotiate, reject, or accept the terms of the contracts at issue; as well as initiate proceedings against the breaching party in state court. As a result, the City's withholding of liquidated damages, pursuant to the terms of an agreed upon contract, does not rise to the level of legislatively mandated rates which are unilaterally imposed upon a service provider.

Defendants contend that Plaintiff's claim arises out of a mere breach of contract, and therefore does not rise to the level of a property right secured by the Constitution. *See* City's Mtn. at 1; B&M's Mtn. at 2-3. Instead, Defendants argue, the dispute only involves Plaintiff's ability to recover liquidated damages under a contract and its ability to recover *in quantum meruit*, neither of which involve a federally protected right under Section 1983. *Id.* They argue Plaintiff's complaint lacks the essential federal question "ingredient" to state a viable Section 1983 claim. *See* City's Mtn. at 5; B&M's Mtn. at 2. In support of their argument, Defendants

8

cite to the fact that federal courts have generally held that a state's breach of contract does not constitute a procedural or substantive due process violation under Section 1983, and that federal courts have been reluctant to federalize ordinary breach of contract suits where a municipality is a party to the dispute. *See* City's Mtn. at 8-9.

This Court finds Defendants arguments and reliance on established case law persuasive as they relate to determining whether Plaintiff has a federally protected property right in withheld monies. Supreme Court precedence guides this Court, in that "[t]o have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Roth*, 408 U.S. at 577. To determine whether the Plaintiff held a protected property right, the Court must look to the law of the state that confers the purported right. *Id.* at 578; *see also, Woody v. Dallas*, 809 F. Supp. 466, 473 (N.D. Tex. 1992) ("property interests are often expressly created by state statutes or regulations") (citations omitted).

In Texas "[n]o citizen of this State shall be deprived of life, liberty, property, privileges or immunities, or in any manner disfranchised, except by the due course of the law of the land." Tex. Const. art. I, § 19. The plaintiff in *Braden v. Texas A&M University System*, a university professor, alleged an injury to his reputation and to his property interest in his continued employment. *Braden v. Texas A&M University System*, 636 F.2d 90, 92 (5th Cir. 1981). He sued Texas A&M University for terminating his employment without due process of law, and therefore in violation of 42 U.S.C. § 1983. *Id.* The court held that "[l]iability is imposed for subjecting a person to the deprivation of rights secured by the Constitution and laws of the United States, not for breach of contract." *Braden*, 636 F.2d at 92. In its deliberations, the Fifth

9

Circuit stated, "Relief is predicated on a denial of a constitutional right. Just as Section 1983 does not create a cause of action for every state-action tort, it does not make a federal case out of every breach of contract by a state agency." *Id.* at 93 (citations omitted). Thus, although Plaintiff's property interests at issue were created by contract, liability under Section 1983 failed because the cause of action for breach of contract was "in essence delictual" and therefore did not arise from the deprivation of rights. *Id.* at 92.

More recently, Texas courts have failed to find "any historical or textual basis to indicate that the Texas Constitution's due process provision implies a separate cause of action for damages." *University of Texas System v. Courtney*, 946 S.W.2d 464, 469 (Tex. App–Fort Worth 1997, writ denied). In *Courtney*, the plaintiff was fired from his position as a professor. He subsequently brought due process claims against the university for damages. The court in *Courtney* held that damages caused by breach of contract do not rise to the level of a constitutionally protected property interest under the Texas Constitution. *Courtney*, 946 S.W.2d at 469 (the plaintiff could not bring a claim for monetary, nonequitable damages against UT under the Texas Constitution's due process provision).

In light of the foregoing, Plaintiff's attempts to argue for substantive process rights under federal law are misplaced. Upon review of the "independent source[s]" of state law outlining property interests in Texas, this Court cannot place Plaintiff's purported claims, either for monetary damages or breach of contract, within the contours of a cognizable property deprivation. *Roth*, 408 U.S. at 577.

### b. Procedural Due Process [6]

As Defendants correctly highlight, the U.S. Supreme Court and many federal courts have been reluctant to find that a private party's contract with a state or municipality automatically creates a protected property interest. *See Lujan v. G&G Fire Sprinklers, Inc.*, 532 U.S. 189, 196 (2001) (breach of contract by state did not give rise to procedural due process claim because the state law provided "ordinary breach of contract suit"); *Ramirez v. Arlequin*, 447 F.3d 19, 25 (1st Cir. 2006) (claim of breach of contract by state action, without allegation state would refuse to remedy the breach, does not state procedural due process claim); *Dover Elevator Co. v. Ark. State Univ.*, 64 F.3d 442, 446 (8th Cir. 2005) ("It is well established that a 'simple breach of contract does not give rise to the level of a constitutional deprivation.'" (quoting *Med. Laundry Servs. v. Bd. of Trs. of Univ. of Ala.*, 906 F.2d 571, 573 (11th Cir. 1990)).

While *Lujan* is a procedural due process case, it provides a means of understanding how to determine when a contract rises to the level of a constitutionally protected property interest. In *Lujan*, a subcontractor on a public works contract sued the California state labor commissioner for withholding payments from the subcontractor pursuant to California statutes and a stipulated clause in the public works contract in dispute. *See Lujan*, 532 U.S. at 191-92. The Supreme Court said,

> In each of these cases, the claimant was denied a right by virtue of which he was presently entitled to either exercise ownership dominion over real or personal property, or to pursue a gainful employment. Unlike those claimants, respondent has not been denied any present entitlement. G&G has been deprived of a payment that it contends it is owed under a contract, based on the State's

---

[6] The parties respective pleadings indicate some confusion and disagreement as to whether the Plaintiff's substantive or procedural due process rights have been violated. While, Plaintiff asserts its claims are based in substantive due process rights, this Court will also consider the issue of procedural due rights in order to address Defendants' arguments.

> determination that G&G failed to comply with the contract's terms. . .Though we
> assume for the purposes of the decision here that G&G has a property interest in
> its claims for payment (citations omitted), it is an interest, unlike the interests
> discussed above, that can be fully protected by an ordinary breach-of-contract
> suit.

*Id.* at 196. The cases alluded to by the Supreme Court were cases where each of the plaintiffs had been denied a present right, such as seizure of real property or employment suspension. Plaintiff's claims do not differ significantly from those made by G&G in *Lujan*. Plaintiff in this case alleges it has been wrongfully deprived of a payment that it argues is owed under contract. As in *Lujan,* that deprivation is not a present entitlement that rises to the level of a constitutionally protected property interest. Therefore, this Court does not find Plaintiff's expectation of payment constitutes a present entitlement that would give it the status of a protected property interest.

Plaintiff does not have a constitutionally protected right in the monies withheld from it by Defendant City, therefore neither its substantive nor procedural due process rights have been violated. Furthermore, because Plaintiff was unable to establish a critical element of a due process claim against the City, it also follows that B&M cannot be held liable for the same claim.

**B.     Contract Impairment**

Plaintiff's second claim, brought pursuant to federal jurisdiction, alleges the City impaired its contracts with Plaintiff in violation of the Contract Clause of the Constitution by passing resolutions to withhold liquidated damages. *See* Amend. Compl. at 13. To support its argument, Plaintiff cites to *U.S. Trust Co. of New York v. New Jersey*, in which the Supreme Court stated that when a state, including its subdivisions, passes a law that abrogates an existing contractual duty, that law violates the Contract Clause. *U.S. Trust of New York v. New Jersey*,

431 U.S., 23-24 (1977).  Plaintiff claims that the City passed an ordinance that "abrogates" its contractual duties.  *See* Pl.'s Resp. at 13.

The City argues that it cannot impair a contract to which it is a party by asserting its own contractual rights.  *See* City's Mtn. at 2.  Defendant City also argues that it had the right to enter into a contract with the Plaintiff as a private party. *Id.*  As a party to a contract, the City had the right to withhold payments in the form of liquidated damages, pursuant to the terms of the contracts, because Plaintiff failed to complete four of the five contracts in a timely manner.  *Id.*  Defendant City also highlights the fact that Plaintiff has not alleged that the City passed resolutions that changed the terms of the contract or the obligations of the parties.  *Id.* at 4.  City concedes that changes of this variety would constitute a contract impairment.  *Id.*  Instead, Plaintiff argues that Defendant passed resolutions authorizing reduced payments.  *Id.*  B&M argues it could not impair the Plaintiff's contracts because it does not have any contractual relationship with the Plaintiff.  *See* B&M's Mtn. at 2.

*Black's Law Dictionary* defines "abrogate" as "abolish (a law or custom) by formal or authoritative action; to annul or repeal." *Black's Law Dictionary* (Westlaw 2009).  There is no indication in Plaintiff's complaint or Defendants' motions to dismiss that Defendant City was trying to abolish, annul, or repeal its contracts with Plaintiff.  The Supreme Court of the United States held,

> The mere fact that the city was a municipal corporation does not give to its refusal the character of a law impairing the obligation of contracts, or deprive a citizen of property without due process of law. That point was decided in *St. Paul Gaslight Co.* v. *St. Paul*, 181 U. S. 142, 150 (1901).

13

*City of Dawson v. Columbia Ave. Saving Fund, Safe Deposit, Title, and Trust Co.*, 197 U.S. 178, 181 (1905). In *Columbia Ave.*, the City of Dawson repudiated its contract with a waterworks company, which the waterworks company claimed impaired its contract and violated its due process rights under the Constitution. *Id.* at 179-180. Instead of finding federal jurisdiction, the Court instead found "a naked case of breach of contract." *Id.* at 181. As a result, the *Columbia* Court reiterated, "We repeat that something more than a mere refusal of a municipal corporation to perform its contract is necessary to make a law impairing the obligation of contracts, or otherwise to give rise to a suit under the Constitution of the United States." *Id.* (citing *Newburyport Water Co.* v. *Newburyport*, 193 U. S. 561, 576 (1904). This reasoning was adopted by the Fifth Circuit Court of Appeals in *Police Jury of the Parish of Tangipahoa, et al. v. Courier Pub. Co., Inc.*, 82 F.2d 1 (5th Cir. 1936). In *Tangipahoa*, a publishing company sued the police jury of the parish of Tangipahoa for passing an exhibited resolution, which the company argued impaired a public advertising contract with the sheriff of the parish. The *Tangipahoa* court reasoned:

> The only ground put forward for interference by a federal court is the claim that the obligation of a contract has been impaired by a law of the state; to wit, a resolution of the police jury under the authority of the state. Assuming, without deciding, that under the state statutes on the subject there is a contract rather than an office involved, and that the complainant is the party to it, and that it entitles complainant to do the advertising in controversy, we think the case presents only a proposed breach of the contract to be remedied by mandamus or other proceeding in the state courts. *No law has been passed which purports to impair the obligation of the contract.*

*Id.* at 2 (emphasis added).

The City of Wichita Falls is a home-rule municipality. *See* B&M's Reply at 1. Under Texas law, the City has the full power of local self-government and may exercise authority

incident to self-government. Tex. Loc. Gov't Code § 51.072. The *Tangipahoa* police jury is analogous to the City of Wichita Falls because (1) both are parties to a contract, (2) under the authority of the state, (3) and no law was passed that impaired the obligations of the contracts at issue.

In light of the above, the Court determines that Plaintiff is unable to demonstrate the Defendants' impaired its contract.

### C. Equal Protection Claims

Plaintiff next argues that because it was awarded five contracts with five separate liquidated damages clauses it was treated unfairly, compared to fellow contractors who were awarded only one contract containing a single liquidated damages clause. *See* Amend. Compl. at 13. MW further alleges that it was singled out from other similarly situated contractors, because a sliding scale was used to determine liquidated damages. *Id.*

Defendants argue that Plaintiff's equal protection claim and argument is not supported by the facts in MW's pleading. Both Defendants cite to the undisputed facts that Plaintiff successfully bid on five separate projects, was awarded the five contracts it bid on, and that it signed contracts for each project with the full knowledge and understanding of all the terms and conditions. *See* City's Resp. at 8; B&M's Resp. at 9. Defendants also argue Plaintiff has not alleged that it belongs to any particular "class" that has been disadvantaged, or that it was subjected to disparate treatment. *Id.*

To establish an equal protection claim, Plaintiff must show that (1) he or she was treated differently from others similarly situated and (2) there was no rational basis for the disparate treatment. *Stotter v. University of Texas at San Antonio,* 508 F.3d 812, 824 (5th Cir. 2007)

*(*citing *Village of Willowbrook v. Olech*, 582 U.S. 562, 564 (2000)). In *Stotter*, the plaintiff was a tenured professor, who had a laboratory and office with which to perform research, teach classes, and perform other normal faculty functions. *Stotter*, 508 F.3d at 817. Defendant fired the plaintiff for maintaining a dangerous laboratory. Among other claims, the professor alleged his equal protection rights were violated because he was treated differently from another similarly situated professor. Both professors had been repeatedly asked by the defendant to address hazardous and unsanitary conditions in their respective laboratories. *Id.* at 824. The plaintiff in *Stotter*, unlike his similarly situated colleague, did not take responsibility for the deficiencies in his lab, he allowed those deficiencies to persist, and even had a confrontation with campus police. *Id.* Therefore, the *Stotter* court found that his equal protection claims lacked merit. *Id.* In this dispute, Plaintiff similarly fails to demonstrate that it was treated differently from the other contractors on the water treatment plant project.

The facts, construed in a light most favorable to Plaintiff, do not suggest that all contractors were not given the same opportunity to bid on various projects. Plaintiff bid on five of the projects, and the City awarded Plaintiff those five contracts. Each project had its own contract, with its own liquidated damages clause. Plaintiff agreed to each contract and each separate liquidated damages clause. The pleadings do not suggest that if other contractors had been awarded multiple projects, they would not be subject to multiple liquidated damages clauses. Nor has Plaintiff suggested that other contractors were awarded multiple contracts, yet only subject to one liquidated damages clause. As a result, Plaintiff's equal protection claim lacks merit because it failed to demonstrate it was treated differently than others who were similarly situated.

16

IV.     Conclusion

In sum, the Court is of the opinion that it appears Plaintiff has made claims "solely for the purpose of obtaining jurisdiction." *Bell*, 327 U.S. at 682-83. Moreover, Plaintiff's commercial interests which it claims to have been deprived, "doesn't seem to be the kind of contractual interest that the values that inform the concept of due process require to be classified as property." *Taake v. Count of Monroe*, 530 F.3d 538, 541 (7th Cir. 2008). Plaintiff did not establish that its right to monies withheld pursuant to a liquidated damages clause constitutes a constitutionally protected property interest. Additionally, Plaintiff's contract impairment claim fails as well. Plaintiff's claims are based on Defendant City's refusal to perform under the contract but do not rise to the level of contract impairment. As noted earlier, *St. Paul Gaslight* settled the issue as to whether a municipality's refusal to perform its contract rises to the level of contract impairment. Finally, Plaintiff's equal protection claim also fails because its allegations are conclusory in nature and do not identify similarly situated contractors with multiple contracts being treated differently.

For the foregoing reasons, the Court finds that the Defendants' motions to dismiss for lack of subject matter jurisdiction should be and are hereby **GRANTED**. As stated earlier, a federal court must dismiss the claim before considering it on the merits if it lacks subject matter jurisdiction to adjudicate the claim. *Moran,* 27 F.3d at 172*; Stockman,* 138 F.3d at 151. Because this court lacks subject matter jurisdiction over the dispute, it may not address the 12(b)(6) motions to dismiss for failure to state a claim. *Id.* Similarly, because the Court lacks subject matter jurisdiction over Plaintiff's Section 1983 federal law claims, it cannot exercise supplemental jurisdiction over the state law claims. *See* 28 U.S.C. § 1367(a), (c); *see also*

*Nowak v. Ironworkers Local 6 Pension Fund*, 81 F.3d 1182, 1187 (2d Cir. 1996) (A court "cannot exercise supplemental jurisdiction unless there is first a proper basis for original federal jurisdiction") (citation omitted); *see also*, *See Avitts v. Amoco Prod. Co.*, 53 F.3d 690, 693 (5th Cir. 1995) (28 U.S.C. § 1367(c)(3) "is plainly inapplicable because, by its terms, it presupposes that the district court obtained supplemental jurisdiction over the state law claims via original jurisdiction over federal claims arising from the same case or controversy.") (per curiam).

Accordingly, Plaintiff's claims are hereby **DISMISSED without prejudice**.

**SO ORDERED** on this 31st day of July, 2009.

_____
**Reed O'Connor**
**UNITED STATES DISTRICT JUDGE**